## Staunton

PAULINE LOUISE COWARDIN AND OTHERS, PARTNERS, TRADING AS W. H. COWARDIN SONS v. R. R. BURRAGE AND OTHERS.

September 10, 1953.

Record No. 4113.

Present, All the Justices.

The opinion states the case.

*David Meade White, Jr.* and *George B. White,* for the appellants.

*Beecher E. Stallard,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This is a proceeding for a declaratory judgment, Code section 8-578, to determine whether the petitioners have the right to employ in their mercantile establishment a registered optometrist under the provisions of Title 54, Chapter 14, of the Code. The petition was filed by Pauline Louise Cowardin and others, partners trading as W. H. Cowardin Sons, now the appellants, against the appellees, composing the Virginia State Board of Examiners in Optometry. Appellees, hereinafter referred to as the Board, filed a demurrer to the petition which was sustained by the trial court on two of the four grounds assigned.

The relevant facts alleged in the petition, and on the demurrer taken as true, are these:

W. H. Cowardin Sons is the same establishment as was founded in 1870 by W. H. Cowardin and located at 1804 E. Main street in Richmond to do a retail jewelry business, repair watches and clocks and to examine eyes and fit and sell glasses. In 1907 he sold the business to his four sons, John, Frank, George and Samuel, all registered optometrists, who continued to operate the establishment as partners. In 1929 George sold his interest to his three brothers. Samuel died in 1937 and his interest passed to his brothers John, Frank and George and several sisters. George sold his inherited interest to the other parties. In 1949 John died and the control of his interest passed by his will to his widow, Pauline Louise, one of appellants. On April 1, 1951, after the death of John, his widow and two of their sons, William and Thomas, together with Edward L. Fall, in the employ of the establishment since 1915, and Lewis T. Cowardin, son of George, acquired the interests of the

other owners and have since operated the establishment. After its establishment the business was moved to 1815 E. Main street; in 1915 to 1729 E. Main and in 1935 to its present location at 1707 E. Main.

For years some eleven or twelve persons were employed in the establishment. John F. Cowardin was the only one of the owners who was a full-time employee and he was employed as a full-time registered optometrist in the said establishment in its established place of business before and on June 21, 1938, the effective date of the sections of the optometry law with which we are now concerned. The business is now and has been for more than eighty years a commercial or mercantile establishment, enjoying the confidence and patronage of the public, known since 1907 as W. H. Cowardin Sons, owned and operated for the most part by that family.

John F. Cowardin, Jr., a registered optometrist, was employed in said establishment from 1945 to early 1951, when he left because the Board threatened to revoke his certificate as a practicing optometrist if he continued the employment. Since that time the establishment has been without the services of a registered optometrist. The Board has also informed the appellants that it is illegal for a registered optometrist to be employed in said establishment and if one is employed action will be taken to revoke or suspend his certificate, which has made it almost impossible, if not impossible, for the appellants to employ a registered optometrist. The prayer of the petition is that it be adjudicated that the appellants do have the right to employ in said establishment a full-time registered optometrist.

The demurrer assigned these four grounds: (1) That petitioners are not the same parties who constituted the firm of W. H. Cowardin Sons on June 21, 1938; (2) That petitioners are not optometrists, "but laymen constituting a mercantile establishment," of which they became members subsequent to June 21, 1938; (3) That section 54-388 of the Code (part of the optometry law) confers no rights upon laymen or upon a mercantile firm and is inapplicable

to them; (4) That said section sets forth the grounds on which the certificate of an optometrist may be revoked or suspended; that petitioners do not belong to the class of persons intended to be protected, and "are not proper parties to this cause."

The trial court sustained the demurrer on grounds (1) and (2), found it unnecessary to pass on grounds (3) and (4) and dismissed the petition. The assignments of error challenge the validity of these rulings.

Section 8-578 in Chapter 25 of Title 8 of the Code providing for declaratory judgments gives courts of record power to make binding adjudications of right in cases of actual controversy, whether consequential relief is or could be then claimed, and provides that controversies involving the interpretations of statutes, among other things, may be so determined.

The petition of the appellants sets forth "actual antagonistic assertion and denial of right." Petitioners assert a right to employ a registered optometrist. The Board denies that they have such a right. Settlement of the controversy involves the interpretation of the statute.

Section 54-388 of the Code is part of Chapter 14 of Title 54 defining optometry, declaring it to be a profession and regulating its practice, providing for examinations and the issuance of certificates. The case of *Ritholz* v. *Commonwealth*, 184 Va. 339, 35 S. E. (2d) 210, also a declaratory judgment proceeding, held the statutes constitutional and gave a brief history of the legislation. Section 54-388 provides that the Board shall revoke or suspend a certificate of registration or exemption, or censure the holder thereof, for any of the causes therein enumerated. Subsection 1 lists ten general causes, while subsection 2, which was added to the law by Acts 1938, chapter 442, page 995, 997, in paragraphs (a) through (i) lists acts deemed unprofessional conduct, followed by paragraphs (j) and (k) in these words:

"(j) But nothing contained in this statute shall prohibit any registered optometrist from practicing optometry as a full time employee on the premises of any commercial or

mercantile establishment and from advertising, either himself or through such commercial or mercantile establishment, that he is a duly registered optometrist and offering to practice optometry as an employee of such commercial or mercantile establishment.

"(k) No registered optometrist shall practice optometry as an employee, directly or indirectly, of any commercial or mercantile establishment nor shall he so advertise himself or through such commercial or mercantile establishment, unless such commercial or mercantile establishment was employing a full-time registered optometrist in its established place of business on June twenty-first, nineteen hundred and thirty-eight."

It will be observed that paragraph (j) in effect gives the right to any registered optometrist to practice optometry as a full-time employee on the premises of any commercial or mercantile establishment, and to advertise that fact, either himself or through the establishment; while paragraph (k) limits that right to a condition that such commercial or mercantile establishment was employing a full-time registered optometrist in its established place of business on June 21, 1938, which was the effective date of the 1938 act.

We have no difficulty in concluding on the facts alleged that the petitioners compose a commercial or mercantile establishment as contemplated by the act. They are described in the demurrer as a mercantile establishment. The fact that the present partners are not the same persons as the partners who composed the partnership which operated the establishment in 1938 is not controlling. The present owners are conducting the business enterprise which was established by W. H. Cowardin in 1870, which in 1907 was purchased by his four sons, carried on under the name of W. H. Cowardin Sons by them or their surviving brothers and sisters until 1949, and since then by a widow and two sons of John F. Cowardin, a son of another brother and a long-time employee of the firm. It is the mercantile establishment that was founded eighty years ago, conducting the same type of business under the same name, on the

same street, in the same city as in 1907, when it was taken over by the sons of the founder, and as it was on June 21, 1938, when it was still entirely owned by the children of the founder.

Among the definitions of "establishment" given by Webster are "state or fact of being established;" "an institution or place of business, with its fixtures and organized staff; as, large *establishment*; a manufacturing *establishment*." Webster's New International Dictionary, 2d ed., p. 874. "(I)n the common understanding of the word it is most simply defined as meaning something established; * * a fixed place where business is conducted, or a place where the public is invited to come and have its work done; * * ." 30 C. J. S., Establishment, p. 1233.

Here the words of the statute "commercial or mercantile establishment" refer to the establishment, whether operated by an individual, partnership or corporation. The establishment does not lose its identity simply by a change in the members of a partnership which owns it, any more than does an established church, for example, cease to be such although none of the members who established it remains in its membership; and the same might well be true of an industrial establishment operating under changed ownership. Admittedly if W. H. Cowardin Sons had been a corporation and employed a registered optometrist on June 21, 1938, it would have a right under the statute to employ one now, even if there had been a complete change of ownership of its stock since that date. It is not to be presumed that the legislature intended so to discriminate between a corporation and a partnership. Rather the clear inference is that it used the word "establishment" in order to avoid discrimination by reason of ownership, and with the purpose that the term should embrace any commercial or mercantile establishment which continued the same established business and was employing a full-time registered optometrist in its established place of business on June 21, 1938.

Similar reasoning occurs in both the majority and minority opinions in *Commonwealth* v. *Jones*, 194 Va. 727, 74

S. E. (2d) 817, in regard to a merchant's license tax statute, Code section 58-257.

The petition in this case alleges, as stated above, that John F. Cowardin, one of the partners who took over in 1907, and who was a registered optometrist was the only one of the owners who was a full-time registered optometrist in the said establishment in its established place of business on the effective date of the statute, June 21, 1938, and for years before that time and afterwards until his death in 1949, and that during all that time he was paid a salary and bonus just as the other employees were paid. If so, then very clearly under paragraphs (j) and (k) of section 54-388 a registered optometrist had a right to practice his profession as a full-time employee on the premises of the appellants' establishment and to advertise that fact and offer to practice as an employee of the appellants in the manner prescribed by paragraph (j). Consequently, by necessary inference and on the facts alleged, the appellants had a right to employ such registered optometrist.

Counsel for the Board argues that since John F. Cowardin was a partner he could not be an employee of the establishment, and cites cases decided under workmen's compensation acts of other States so holding on the ground that a partner ought not to be allowed to claim against himself. Those holdings are not applicable to this case. Workmen's compensation acts generally define, as does the Virginia act, Code section 65-4, who are employees for the purposes of the act. The concern of the legislature, however, in writing paragraph (k) of section 54-388 was not with the technical relation of employer and employee, as in compensation cases. The legislative purpose obviously was to leave undisturbed the business practice of establishments which were maintaining the services of an optometrist in their established place of business at the effective date of the legislation. In the phrase in paragraph (k) "unless such commercial or mercantile establishment was employing a full-time registered optometrist in its established place of business," the word "employing" has the meaning of "mak-

ing use of," a sense in which it is frequently used. Webster's New International Dictionary, 2d ed., p. 839; 30 C. J. S. at p. 223.

It is not reasonable to suppose that paragraph (k) was meant to apply only to an establishment which was then using a registered optometrist to whom it sustained the relation of master and servant and not to an establishment whose optometrist owned a share in the business.

Our conclusion is that the demurrer to the petition should not have been sustained on any of its grounds. The decree appealed from is therefore reversed and the case is remanded for reinstatement of the appellants' petition and further proceedings thereon.

*Reversed and remanded.*